[Cite as *State v. Bradley*, 2012-Ohio-4787.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Sheila G. Farmer, J. |
| -vs- | : | |
| | : | Case No. 2012CA00011 |
| | : | |
| BRANDEN LEMAR BRADLEY | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
                             Common Pleas, Case No. 2011CR1397


JUDGMENT:                    AFFIRMED IN PART, REVERSED IN
                             PART, AND REMANDED


DATE OF JUDGMENT ENTRY       October 9, 2012


APPEARANCES:

For Appellant:                        For Appellee:

GEORGE URBAN                          JOHN D. FERRERO, JR.
116 Cleveland Ave. NW, Ste. 808       STARK COUNTY PROSECUTOR
Canton, OH 44702                      KATHLEEN O. TATARSKY
                                      110 Central Plaza S., Ste. 510
                                      Canton, OH 44702-1413

*Delaney, J.*

{¶1} Appellant Branden Lemar Bradley appeals from the judgment entries of the Stark County Court of Common Pleas convicting him of one count each of domestic violence and burglary and sentencing him to an aggregate prison term of twenty-four months. Appellee is the state of Ohio.

*FACTS AND PROCEDURAL HISTORY*

{¶2} Appellant and Tina Gadison have known each other for seven years; they have been in a relationship in the past and have a five-year-old daughter together. Gadison also has a twelve-year-old son from another relationship. As of August 10, 2011, appellant and Gadison were not romantically involved but appellant was living at the house on St. Elmo Avenue N.E., Canton, with Gadison and her two children.

{¶3} On that date, appellant and Gadison argued about paying bills. Appellant kicked a hole in the wall near the stairway and Gadison told him to get out. Appellant became angrier and continued to kick at the hole in the wall. Gadison picked up her cell phone and pretended she was talking to police.

{¶4} Appellant and Gadison came down the stairs, arguing, into the dining room. Appellant said, "OK, b (*sic*), you want to call the police on me?" and picked up three candles on a decorative plate. Gadison ducked as appellant threw the candles at her. Appellant then grabbed the plate, ran toward Gadison, and hit her with it until it shattered. Appellant also kicked her in the head.

{¶5} At this point, both children were in the dining room and witnessed the incident. Gadison's son told appellant to leave his mom alone, and appellant pushed

him to the ground.  Gadison, with blood running down her face, ran to appellant and kicked him.

{¶6}  Appellant took a bag of sugar from the kitchen, went to Gadison's car, and opened the gas tank to pour the sugar in.  Instead, he put the sugar down and threw a brick through the back window of the car, shattering it.

{¶7}  Gadison called 911.  Appellant was gone upon arrival of police, who photographed the damage to the house and car and Gadison's visible physical injuries.  They urged Gadison to seek medical attention but she refused, although she did go to the hospital later that day.  Gadison ended up with three stitches in her face and "three or four" in her head.

{¶8}  Upon her return from the hospital that evening, Gadison and her children slept downstairs in the living room.  She was awakened by appellant's constant phone calls, which she didn't answer.  Eventually in the early morning hours of August 11, appellant appeared at the front door and beat on it.  Gadison called 911 again and appellant threw another brick at her car.

{¶9}  Police responded to the home again and spoke with Gadison, but appellant was gone.  They left, only to receive yet another 911 call that appellant was back.  Eventually police did see an individual matching appellant's description in the neighborhood, but were unable to apprehend him.

{¶10} Investigators noted Gadison's injuries were consistent with her statements and with physical evidence at the scene, including a hole in the plaster of the stairway, a splintered glass plate in the dining room with blood on it, candlesticks

on the floor, an overturned vase, and the broken window of her car. The photos of Gadison's injuries and the physical evidence were later introduced by appellee at trial.

{¶11} Appellant was charged by indictment with one count of felonious assault, one count of domestic violence, one count of burglary, one count of child endangering, and one count of criminal damaging. Appellant entered pleas of not guilty and the case proceeded to trial by jury. Appellant stipulated to one prior conviction of domestic violence which enhanced the present charge to a felony of the fourth degree. Appellant moved for judgments of acquittal pursuant to Crim.R. 29 at the close of appellee's evidence and at the close of all of the evidence; the motions were overruled.

{¶12} Appellant was found guilty of domestic violence, burglary, and criminal damaging; he was found not guilty of felonious assault and child endangering. The trial court declared a mistrial on the criminal damaging count due to replacement of a juror with an alternate; that ruling is not at issue in this appeal.

{¶13} The trial court sentenced appellant to consecutive terms of 12 months each on the count of domestic violence and the count of burglary, totaling an aggregate prison term of 24 months.

{¶14} Appellant now appeals from the judgment entries of his convictions and sentence.

{¶15} Appellant raises three Assignments of Error:

{¶16} "I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶17} "II.   THE TRIAL COURT ABUSED ITS DISCRETION BY NOT ALLOWING A WITNESS ON BEHALF OF APPELLANT TO TESTIFY."

{¶18} "III.   THE TRIAL COURT ERRED BY ORDERING APPELLANT TO SERVE CONSECUTIVE SENTNECES (*sic*)."

I.

{¶19} In his first assignment of error, appellant argues his convictions for domestic violence and burglary are not supported by sufficient evidence and are against the manifest weight of the evidence.  We disagree.

{¶20} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.  *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus.  The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilty beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶21} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the

credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶22} Appellant was convicted of one count of domestic violence, a felony of the fourth degree, pursuant to R.C. 2919.25(A), which states, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Appellant was also convicted of one count of burglary, a felony of the fourth degree, pursuant to R.C. 2911.12(A)(4), which states, "No person, by force, stealth, or deception, shall * * * trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."

{¶23} Appellant first argues his conviction for burglary is against the manifest weight and sufficiency of the evidence because he did not "trespass" at Gadison's residence; he lived there. The evidence showed appellant stayed at the residence periodically but did not have a key (T. 144). Moreover, appellant may have had Gadison's permission to be at the residence, but the permission was revoked and he became a trespasser upon committing an offense of violence against her. "Where a defendant commits an offense against a person in the person's private dwelling, the defendant forfeits any privilege, becomes a trespasser and can be culpable for

[aggravated] burglary." *State v. Cutts*, 5th Dist. No. 2008CA000079, 2009-Ohio-3563, ¶ 181, citing *State v. Steffen*, 31 Ohio St.3d 111, 115, 509 N.E.2d 383 (1987).

{¶24} Because we find appellant committed an offense of violence against Gadison, infra, and affirm his conviction for domestic violence, we find appellant's burglary conviction is not against the manifest weight or sufficiency of the evidence.

{¶25} With regard to his conviction for domestic violence, appellant points to minor discrepancies in the testimony and argues Gadison was not a credible witness. It is primarily up to the jury to determine the witnesses' credibility and to resolve inconsistencies in the evidence. See, *State v. DeHass*, 10 Ohio St.3d 230, 227 N.E.2d 212 (1967). Upon reviewing the record, we find the jury did not lose its way in convicting appellant of domestic violence because Gadison's account was consistent with the physical evidence at the scene and with her visible injuries.

{¶26} Having found appellant's convictions for burglary and domestic violence are supported by sufficient evidence and are not against the weight of the evidence, we overrule appellant's first assignment of error.

II.

{¶27} In his second assignment of error, appellant argues the trial court abused its discretion in disallowing the testimony of his grandmother, Sylvia Hooten, to refute Gadison's testimony that she never said she was going to "f*** that little mother***er" in terms of sending appellant to prison. We disagree.

{¶28} Upon direct examination, appellee asked Gadison whether she had spoken to appellant's family since the incident, and she agreed she had. She denied telling appellant's grandmother "I'm going to f*** that little mother***er," but she

acknowledged she may have said he would not get away with it. Upon cross examination, Gadison stated she told Hooten appellant would "get what he deserves."

{¶29} When told appellant intended to call Hooten as a witness, the trial court inquired for what purpose. Trial counsel proffered he intended to show Gadison fabricated the allegations and challenge her testimony that she never made any vindictive statements. The trial court noted, however, that counsel would not be permitted to inquire about specifics of the conversation between Hooten and Gadison because Gadison denied making the disputed statement.

{¶30} Appellant now asserts he should have been permitted to call Hooten as a witness and inquire about Gadison's statements to challenge her credibility. The admission or exclusion of evidence is a matter left to the sound discretion of the trial court. *State v. Sage,* 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). Our task is to look at the totality of the circumstances and determine whether the trial court acted unreasonably, arbitrarily, or unconscionably in allowing or excluding the disputed evidence. *State v. Rogers*, 5th Dist. No. 07 CA 106, 2008-Ohio-6630, ¶ 17, citing *State v. Oman*, 5th Dist. No. 1999CA00027, 2000 WL 222190 (Feb.14, 2000).

{¶31} The trial court found the proffered testimony violated Evid.R. 608 as extrinsic evidence of a specific instance of a witness' conduct: while appellant could call Hooten and inquire generally whether she had spoken with Gadison, counsel could not get into the specifics of what was said. Appellant had inquired of Gadison

on cross-examination about the disputed statement, but was then "stuck" with her answer, according to the trial court.

{¶32} Evid.R. 608(B) states:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid. R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

{¶33} Upon review we find the trial court's decision to disallow Hooten's testimony was not an abuse of discretion. Not only would the proffered evidence violate Evid.R. 608(B), it would have limited probative value as to whether Gadison was truthful about the events of August 10 and 11, 2011. The trial court's decision to disallow the testimony was not unreasonable, arbitrary, or unconscionable.

{¶34} Appellant's second assignment of error is overruled.

III.

{¶35} In his third assignment of error, appellant claims the trial court erred in imposing consecutive sentences without engaging in judicial fact-finding required by H.B. 86. We agree.

{¶36} In *State v. Kalish,* the Ohio Supreme Court set forth a two step process for examining felony sentences. 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Id.* at ¶ 4. If this first step "is satisfied," the second step requires the trial court's decision be "reviewed under an abuse-of-discretion standard." *Id.*

{¶37} First, we note H.B. 86, which enacted the consecutive sentencing provisions addressed by appellant, became effective on September 30, 2011. Appellant was sentenced on December 15, 2011, and is therefore subject to the new sentencing provisions.

{¶38} H.B. 86 amended subsection (E)(4) of R.C. 2929.14 [now subsection (C)(4)] and subsection (A) of R.C. 2929.41, which now state respectively:

(C)(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed

pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

(A) Except as provided in division (B) of this section, division (E) of section 2929.14, or division (D) or (E) of section 2971.03 of the Revised Code, a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States.  Except as provided in division (B)(3) of this section, a jail term or sentence of imprisonment for misdemeanor shall be served concurrently with a prison term or sentence of imprisonment for felony served in a state or federal correctional institution.

{¶39} In the wake of the enactment of H.B. 86, Ohio appellate courts have noted R.C. 2929.14(C)(4) now requires trial courts to make factual findings when imposing consecutive sentences.  *State v. Frasca*, 11th Dist. No. 2011-T-0108, 2012-Ohio-3746, ¶ 56, citing *State v. Stalnaker*, 11th Dist. No. 2011-L-151, 2012-Ohio-3028 and *State v. Hites*, 3rd Dist. No. 6-11-07, 2012-Ohio-1892.

{¶40} Our colleagues on the Eleventh District Court of Appeals have noted, though, the new provisions do not require a sentencing court to give reasons for imposing consecutive sentences akin to those once required by the holding of the Ohio Supreme Court in *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473. *State v. Frasca*, supra, 2012-Ohio-3746 at ¶ 57. Noting *Comer's* holding rested upon the former R.C. 2929.14(E)(4) and 2929.19(B)(2)(c), which were both found unconstitutional in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, the Eleventh District concluded "a sentencing court is not statutorily required to make a finding that gives its reasons for selecting the sentence imposed." Id.

{¶41} *Frasca* ultimately held that while the trial court in that case did not give reasons for imposing consecutive terms, it made sufficient factual findings as required by R.C. 2929.14(C) where it noted the length of the defendant's criminal history and the number of offenses of violence, found this criminal history required consecutive terms, and also found the victim was injured severely. Id., citing *State v. Jones*, 1st Dist. No. C-110603, 2012-Ohio-2075 and *State v. Johnson*, 8th Dist. No. 97579, 2012-Ohio-2508.

{¶42} Neither party in the instant case addressed the *Comer* question, nor does appellant specify where the trial court fell short in making factual findings at sentencing. It falls to us, therefore, to review the record of this sentencing and determine whether the trial court made the factual findings required by R.C. 2929.14(C)(4).

{¶43} At the sentencing hearing, the trial court stated the following with regard to consecutive sentences:

\* \* \* \*.

Mr. Bradley, the Court is obviously familiar with the facts of this case, the fact that it involved two separate instances over two separate days. The jury did acquit with regard to the most serious of the offense (*sic*), the felonious assault, however did find you guilty of the felony four burglary and also a felony four domestic violence.

As has been indicated, based on your record which is as indicated to give—to not give consecutive sentences would demean the seriousness of the offenses and not adequately protect the public from further criminal behavior. Because of the nature of the offenses the Court finds that consecutive sentences are in fact warranted, and, and pursuant to the statute for consecutive sentences the conditions have been met. Accordingly, I'm sentencing you to 12 months with regard to each of the felony fours to be served consecutively one after the other for a total incarceration of 24 months giving you credit for all time served to date.

\* \* \* \*.

{¶44} The sentencing journal entry of the trial court states the following with regard to consecutive terms: "The concurrent sentence will demean the seriousness of the defendant's conduct and will not adequately protect the public for future crime by the defendant or others."

{¶45} Although the trial court stated "the statutory conditions for consecutive sentences have been met," we find this is not judicial fact-finding pursuant to R.C. 2929.14(C)(4)(a) through (c) under the H.B. No. 86 amendments. See, *State v. Williams*, 5th Dist. No. 11-CA-115, 2012-Ohio-3211. We find the imposition of

consecutive terms, absent the required fact-finding, is clearly and convincingly contrary to law.

{¶46} Accordingly, appellant's third assignment of error is sustained and this matter is remanded to the trial court for resentencing under H.B. No. 86.


By: Delaney, P.J.

Farmer, J. concur.

Hoffman, J. concurs and dissents
separately


_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
HON. SHEILA G. FARMER


PAD:kgb

*Hoffman, J., concurring in part and dissenting in part*

{¶47} I concur in the majority's analysis and disposition of Appellant's first and second assignments of error.

{¶48} I respectfully dissent from the majority's analysis and disposition of Appellant's third assignment of error. Unlike the majority, I find the trial court did make the findings required for imposition of consecutive sentences satisfying R.C. 2929.14(C). Accordingly, I would affirm the trial court's judgment in toto.

_____

HON. WILLIAM B. HOFFMAN

[Cite as *State v. Bradley*, 2012-Ohio-4787.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| BRANDEN L. BRADLEY | : | |
| | : | |
| | : | Case No. 2012CA00011 |
| Defendant-Appellant | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed in part, reversed in part, and remanded. Costs assessed equally between appellant and appellee.


_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
HON. SHEILA G. FARMER