[Cite as *State v. Verity*, 2013-Ohio-1158.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 12 MA 139 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| JAMES VERITY, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS: Criminal Appeal from Common Pleas
Court, Case No. 11 CR 1154.


JUDGMENT: Judgment Affirmed.
Motion to Withdraw Granted.


APPEARANCES:
For Plaintiff-Appellee: Attorney Paul J. Gains
Prosecuting Attorney
Attorney Ralph M. Rivera
Assistant Prosecuting Attorney
21 W. Boardman St., 6th Floor
Youngstown, OH 44503

For Defendant-Appellant: Attorney Jay Blackstone
P.O. Box 3412
Youngstown, OH 44513


JUDGES:
Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite


Dated: March 25, 2013

DeGenaro, P.J.

{¶1} Defendant-Appellant, James T. Verity appeals the July 12, 2012 judgment of the Mahoning County Court of Common Pleas convicting him of three counts of breaking and entering and one count of vandalism and sentencing him accordingly. Appointed appellate counsel filed a no-merit brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.E.2d 493 (1967), and *State v. Toney*, 23 Ohio App.2d 203, 262 N.E.2d 419 (7th Dist.1970), and requested leave to withdraw from the case. Verity failed to file a pro-se brief.

{¶2} A thorough review of the case file reveals that there are no meritorious errors. The plea colloquy complied with Crim.R. 11(C) and, as such, the plea was intelligently, voluntarily, and knowingly entered. The sentence imposed by the trial court was neither clearly and contrary to law, nor was it an abuse of discretion; specifically it complied with recently enacted H.B. 86. Accordingly, the judgment of the trial court is affirmed and counsel's motion to withdraw is granted.

## Facts and Procedural History

{¶3} On November 17, 2011, Verity was indicted by the Mahoning County Grand Jury on three counts of breaking and entering (R.C. 2911.13(A)) and one count of vandalism (R.C. 2909.05(B)(1)(b)), all fifth-degree felonies. Verity was accused of breaking into three Austintown businesses, causing property damage to one of them.

{¶4} Verity was arraigned, pled not guilty and counsel was appointed. He executed a speedy trial waiver. Verity later entered into a Crim.R. 11 plea agreement with the State. Verity agreed to plead guilty to all of the charges in the indictment and in exchange the State agreed to stand silent as to sentencing.

{¶5} A Criminal Rule 11 plea hearing was held during which time the trial court engaged in a colloquy with Verity regarding the rights he would give up by pleading guilty. At the end of the hearing, the court accepted Verity's plea as knowingly, voluntarily and intelligently made and continued sentencing so that a presentencing investigation could be prepared.

{¶6} At sentencing, the State kept its promise to stand silent. Defense counsel asserted that Verity had committed the crimes due to his crack cocaine addiction, but that

since then Verity had received intensive rehabilitative treatment and had been clean and sober for 16 months. Defense counsel urged the trial court to impose a community control sanction, or in the alternative, if the trial court deemed prison necessary, six-month concurrent sentences. The trial court asked Verity if he wanted to make a statement in mitigation of sentence. Verity made a brief statement, apologizing for his conduct and expressing that he was attempting to change his life for the better. No representatives from the affected businesses appeared at sentencing.

{¶7} After considering, inter alia, the PSI, Verity's lengthy criminal history, the fact that Verity was on community control when he committed the charged offenses, and the serious economic harm the crimes caused, the trial court sentenced Verity to a two-year aggregate sentence: 12 months on each of the 4 counts, with Count II to be served consecutively and the remaining counts to be served concurrently. The trial court determined that a consecutive sentence was necessary to protect the public. The trial court gave Verity 16 days of jail-time credit. The trial court informed Verity that upon completion of his sentence he could be placed on three years of discretionary post-release control, and explained the consequences of violating post-release control.

{¶8} In the July 12, 2012 sentencing entry, the trial court stated as follows:

> The Court has reviewed the sentencing guidelines (criteria) of enacted House Bill 86 and the revised ORC §§2929.11, 2929.13 and 2929.14
>
> The Court considered the record, presentence investigation report, oral statements and the principles and purposes of sentencing under Ohio Revised Code § 2929.11, and has balanced the seriousness and recidivism factors under Ohio Revised Code § 2929.12. The Court finds that Defendant is not eligible for a community control sanction. ***
>
> The Court finds that in order to protect the public and not punish the Defendant disproportionately and pursuant to § 2929.14(C)(4) that a consecutive prison term is necessary due to Defendant's previous

convictions and a high risk of recidivism.

**Anders No-Merit Brief**

**{¶9}** An attorney appointed to represent an indigent criminal defendant may seek permission to withdraw if the attorney can show that there is no merit to the appeal. *See generally Anders*, 386 U.S. 738. To support such a request, appellate counsel is required to undertake a conscientious examination of the case and accompany his or her request for withdrawal with a brief referring to anything in the record that might arguably support an appeal. *Toney*, 23 Ohio App.2d at 207. The reviewing court must then decide, after a full examination of the proceedings, whether the case is wholly frivolous. *Id.*

**{¶10}** In *Toney*, this Court established guidelines to be followed:

3. Where a court-appointed counsel, with long and extensive experience in criminal practice, concludes that the indigent's appeal is frivolous and that there is no assignment of error which could be arguably supported on appeal, he should so advise the appointing court by brief and request that he be permitted to withdraw as counsel of record.

4. Court-appointed counsel's conclusions and motion to withdraw as counsel of record should be transmitted forthwith to the indigent, and the indigent should be granted time to raise any points that he chooses, pro se.

5. It is the duty of the Court of Appeals to fully examine the proceedings in the trial court, the brief of appointed counsel, the arguments pro se of the indigent, and then determine whether or not the appeal is wholly frivolous.

6. Where the Court of Appeals makes such an examination and concludes that the appeal is wholly frivolous, the motion of an indigent appellant for the appointment of new counsel for the purposes of appeal should be denied.

7. Where the Court of Appeals determines that an indigent's appeal is wholly frivolous, the motion of court-appointed counsel to withdraw as

counsel of record should be allowed, and the judgment of the trial court should be affirmed.

*Id.* at syllabus.

**{¶11}** After reviewing the record in this case, Verity's appointed counsel concluded there are no meritorious issues to present on appeal and filed a no-merit brief on October 9, 2012. On October 26, 2012, this court informed Verity of counsel's no-merit brief and granted Verity 30 days to file his own written brief, which he did not do. Pursuant to *Toney*, this court must now review the proceedings and determine whether it agrees that this appeal wholly lacks merit. As this case involves a guilty plea, the only issues that can be reviewed on appeal relate to the plea or the sentence.

### Plea

**{¶12}** A plea must be made knowingly, voluntarily and intelligently. *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶7; *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). If it is not, it has been obtained in violation of due process and is void. *State v. Martinez*, 7th Dist. No. 03MA196, 2004-Ohio-6806, ¶11, citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). When determining the voluntariness of a plea, this court must consider all of the relevant circumstances surrounding it. *State v. Johnson*, 7th Dist. No. 07 MA 8, 2008-Ohio-1065, ¶8, citing *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

**{¶13}** In order for a trial court to ensure that a felony defendant's plea is knowing, voluntary and intelligent, it must engage the defendant in a colloquy pursuant to Crim.R. 11(C). *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶25-26. During the colloquy, the trial court is to provide specific information to the defendant, including constitutional and nonconstitutional rights being waived. Crim.R. 11(C)(2); *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355.

**{¶14}** The constitutional rights include the right against self-incrimination, the right to a jury trial, the right to confront one's accusers, the right to compel witnesses to testify by compulsory process, and the right to have the state prove the defendant's guilt beyond

a reasonable doubt. Crim.R. 11(C)(2)(c); *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶19-21. A trial court must strictly comply with these requirements. *Id.* at ¶31; *State v. Ballard*, 66 Ohio St.2d 473, 477, 423 N.E.2d 115 (1981). "Strict compliance" does not require a rote recitation of the exact language of the rule. Rather, a reviewing court should focus on whether the "record shows that the judge explained these rights in a manner reasonably intelligible to the defendant." *Id.* at paragraph two of the syllabus.

**{¶15}** The nonconstitutional rights include that the defendant must be informed of the effect of his plea, the nature of the charges, and the maximum penalty involved, which includes an advisement on post-release control. Further, a defendant must be notified, if applicable, that he is not eligible for probation or the imposition of community control sanctions. Finally, this encompasses notifying the defendant that the court may proceed to judgment and sentence after accepting the guilty plea. Crim.R. 11(C)(2)(a)(b); *Veney*, 120 Ohio St.3d 176 at ¶10-13; *Sarkozy*, 117 Ohio St.3d 86, at ¶19-26. The trial court must substantially comply with these requirements. *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id.* at 108. In addition, a defendant who challenges his guilty plea on the basis that the advisement for the nonconstitutional rights did not substantially comply with Crim.R. 11(C)(2)(a)(b) must also show a prejudicial effect, meaning the plea would not have otherwise been made. *Veney*, 120 Ohio St.3d 176 at ¶15 citing *Nero*, 56 Ohio St.3d at 108.

**{¶16}** The trial court's advisement of Verity's constitutional rights strictly complied with Crim.R. 11(C)(2)(c). Verity was informed that by pleading guilty he was waiving his right to a jury trial, his right to confront witnesses against him, his right to subpoena witnesses in his favor, his right to have the State prove at trial each and every element of the charged offenses beyond a reasonable doubt and his right to not testify at trial.

**{¶17}** The trial court substantially complied with Crim.R. 11(C) when advising Verity of his nonconstitutional rights. Verity was advised of the elements of charges against him. He was correctly advised of the maximum penalty involved, four years in

prison, and that he could be subject to a three-year period of post-release control. R.C. 2929.14(A)(5); R.C. 2967.28(C). The trial court also informed him that it could proceed immediately to sentencing after accepting the guilty plea. R.C. 2925.11(C)(6)(c).

{¶18} And although the trial court did not specifically inform Verity during the plea hearing that he was eligible for community control, the written plea agreement explained that prison was neither mandatory nor presumed, and Verity indicated during the plea hearing that he had read and understood the plea agreement and had reviewed it with his attorney. This constitutes substantial compliance with Crim.R. 11(C). Moreover, even if not, there was no apparent prejudice to Verity, Defense counsel stated during the hearing that, against legal advice, Verity had rejected a plea deal for a six-month jointly recommended sentence, because he wanted a PSI prepared in the hopes he would receive community control. Thus, Verity was aware that community control was an option for him.

{¶19} Therefore, considering all of the above, the plea colloquy complied with Crim.R. 11(C) and, as such, the plea was intelligently, voluntarily, and knowingly entered. There are no appealable issues concerning the plea.

### Sentencing

{¶20} When reviewing a felony sentence, an appellate court first examines the sentence to ensure that the sentencing court clearly and convincingly complied with the applicable laws. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶4. A trial court's sentence would be contrary to law if, for example, it were outside the statutory range, in contravention to a statute, or decided pursuant to an unconstitutional statute. *Id.* at ¶15. An appellate court then reviews the trial court's sentencing decision for abuse of discretion. *Kalish* at ¶17, 19-20. An abuse of discretion means more than an error in judgment; but rather implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

### Clearly and Contrary to the Law

{¶21} As to the first prong of the *Kalish* test, Verity's sentence was not clearly and convincingly contrary to law. Verity was afforded his allocution rights pursuant to Crim.R.

32(A)(1). The trial court asked Verity if he had anything to say before the sentence was imposed, and Verity gave a brief statement in mitigation. The trial court properly notified Verity that upon his release from prison he could be subject to a three-year period of post-release control and explained the ramifications of violating post-release control. R.C. 2967.28(C). In addition, the two-year prison sentence Verity received is within the six-month to two-year statutory range for the charges. *See* R.C. 2929.14(A)(5). The trial court considered the purposes of felony sentencing and the sentencing factors. *See* R.C. 2929.11 and R.C. 2929.12.

H.B. 86

**{¶22}** With the recent enactment of H.B. 86, there are now other issues this court must review when consecutive sentences are imposed. H.B. 86 took effect on September 31, 2011. Verity was sentenced on July 6, 2012.

**{¶23}** Before H.B. 86 was enacted, the Ohio Supreme Court held "there is no mandate for judicial fact-finding in the general guidance statutes." *State v. Foster*, ¶42. *Foster* struck down as unconstitutional R.C. 2929.14(E)(4), which at that time governed the imposition of consecutive sentences, because it required judicial fact-finding.

**{¶24}** However, this aspect of *Foster's* holding was later undercut by the United States Supreme Court's decision in *Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009). As the Ohio Supreme Court noted in *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, "[a]fter *Ice*, it is now settled law that * * * the jury-trial guarantee of the Sixth Amendment to the United States Constitution does not preclude states from requiring trial court judges to engage in judicial fact-finding prior to imposing consecutive sentences." *Id*. at ¶19. The *Hodge* Court concluded, however, that *Ice* did not revive the former consecutive sentencing provisions held to be unconstitutional in *Foster*, stating that "[t]rial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences unless the General Assembly enacts new legislation requiring that findings be made." *Id*. at paragraphs two and three of the syllabus.

**{¶25}** With the passage of H.B. 86 in 2011, the Ohio Legislature has re-enacted

verbatim the consecutive sentencing provisions of former R.C. 2929.14(E)(4) as they existed prior to *Foster*, although the provisions have been renumbered.

{¶26} Specifically, R.C. 2929.14(C)(4) now provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶27} In his no-merit brief, counsel raises a potential issue with regard to the requirements in the new law. Specifically, counsel notes that the trial court failed to expressly find during the sentencing hearing that consecutive sentences are "not disproportionate" to the seriousness of the offender's conduct and to the danger the offender poses to the public. A review of the sentencing entry reveals that the trial court found: "* * * in order to protect the public and not punish the Defendant disproportionately

and pursuant to § 2929.14(C)(4) that a consecutive prison term is necessary due to Defendant's previous convictions and a high risk of recidivism."

**{¶28}** Other courts interpreting this provision have looked to pre-*Foster* precedent analyzing former R.C. 2929.14(E)(4) to interpret R.C. 2929.14(C)(4). For instance, in *State v. Davis*, 8th Dist. Nos. 97689, 97691, and 97692, 2012-Ohio-3951, the Eighth District concluded:

> Under R.C. 2929.14(C)(4), the trial court must state its findings in support of consecutive sentences on the record at the sentencing hearing. *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, paragraph one of the syllabus. However, it is not required to recite any "magic" or "talismanic" words when imposing consecutive sentences provided it is "clear from the record that the trial court engaged in the appropriate analysis." *State v. Murrin*, 8th Dist. No. 83714, 2004-Ohio-3962, ¶12.

*Davis* at ¶8.

**{¶29}** Similarly, in *State v. Frasca*, 11th Dist. No. 2011-T-0108, 2012-Ohio-3746, the Eleventh District concluded: "in making findings regarding consecutive sentencing, 'a verbatim recitation of the statutory language is not required by the trial court.' " *Id.* at ¶60, quoting *State v. Green*, 11th Dist. No.2003-A-0089, 2005-Ohio-3268, ¶26, citing *State v. Grissom*, 11th Dist. No.2001-L-107, 2002-Ohio-5154, ¶21.

**{¶30}** In *Frasca*, during the sentencing hearing the trial court emphasized Frasca's extensive criminal record and noted that many of Frasca's prior convictions were for felonious assault, menacing and aggravated menacing. The trial court further "found that the victim in the Felonious Assault case was cut 'pretty severely.' The trial court finally found[:] 'based on your past record, that is the reason I have given the sentence I have.' In the sentencing entry the trial court also stated that the 'Court finds that the offender's criminal history shows that consecutive terms are needed to protect the public.'" *Frasca* at ¶58-59.

**{¶31}** Drawing from recent precedent from other districts, the Eleventh District concluded that the trial court's findings were sufficient:

> The [trial] court noted on the record Frasca's extensive record and this record being the basis for the sentence. It also stated in the Entry that a consecutive sentence was needed to protect the public. Such findings have been found sufficient to satisfy the factual findings requirement under R.C. 2929.19(C)(4). *State v. Jones*, 1st Dist. No. C–110603, 2012–Ohio–2075, ¶ 23 (where the trial court stated during the sentencing hearing that it was ordering the prison terms to be served consecutively because the defendant had an extensive criminal history and the victims had been seriously injured, these statements were sufficient to show that the trial court's imposition of consecutive sentences was appropriate and complied with R.C. 2929.14(C)(4)); *State v. Johnson*, 8th Dist. No. 97579, 2012–Ohio–2508, ¶ 12 (when the court made findings related to the appellant's specific conduct in the case and his repeated engagement in criminal activity, it properly found that the sentence was not disproportionate to his conduct and threat he posed to society).

*Frasca* at ¶60.

**{¶32}** Conversely, courts have held that a mere statement by the trial court that the statutory conditions for consecutive sentences have been met, without more specificity, is insufficient and requires a remand for resentencing . *See, e.g., State v. Bradley*, 5th Dist. No. 2012CA00011, 2012-Ohio-4787, ¶43-45.

**{¶33}** In this case, the trial court made sufficient findings on the record prior to imposing consecutive sentences. Although the court did not recite the language of the statute verbatim, it is clear that the court found that consecutive sentences are necessary to protect the public from future crime, that consecutive sentences are not disproportionate to the seriousness of Verity's conduct and to the danger he poses to the public, and that Verity's history of criminal conduct demonstrates that consecutive

sentences are necessary to protect the public from his future criminal acts. R.C. 2929.14(C)(4)(c).

**{¶34}** Specifically, during the sentencing hearing the trial court stated:

THE COURT: * * * Well, as everybody is aware, I have the benefit of having the pre-sentence investigation. I am sure your lawyer has gone over it with you. *And of particular interest to the court is that these four different counts are your * * * ninth, tenth, eleventh, twelfth felony count. When you committed these offenses you were already out on community control. In addition to that, you have a minimum of at least 12 prior misdemeanor convictions all involving thievery, theft, criminal trespass,* everything, which is indicative also, I might add, recognizing you that you have obviously some underlying problem. But your underlying problem, obviously, in the years past has been kicked aside and ignored and obviously must have [sic] recognized that something transpired, at least in this twelfth felony, that it was about time to do something. But at the same time it was a little late. I might also add I am not taking into account you have had more cases dismissed than the average citizen has filed against them. And, obviously, you stood in front of judges and told them that, you know, you are trying to do what you can. * * *

But taking everything into account, particularly your prior criminal history, your history of reoffending, all of a similar nature, and in reviewing the principles and purposes of sentencing, and in particular in reviewing the crimes that you committed while you are under the control of another court, and it shows this court that *consecutive sentencing is needed to protect the public.* And I might also add that in the PSI, in the pre-sentence investigation, it is noted that there was a *very significant loss* of damages. (emphasis added.)

**{¶35}** Based on the totality of the above statement, the trial court made sufficient

findings to support the imposition of consecutive sentences pursuant to R.C. 2929.14(C)(4).

{¶36} Moreover, in the sentencing entry, the trial court made a more explicit finding with regard to proportionality: "The Court finds that in order to protect the public and not punish the Defendant disproportionately and pursuant to §2929.14(C)(4) that a consecutive prison term is necessary due to Defendant's previous convictions and a high risk of recidivism." Two of the purposes of Ohio's felony sentencing scheme are to provide the defendant with notice of a definite sentence, and meaningful appellate review if error is alleged. The sentencing transcript and entry here provide Verity with notice of his definite sentence and why it was imposed; and also provides this court with a record sufficient to conduct a meaningful review. Accordingly, Verity's sentence is not contrary to law.

### Abuse of Discretion

{¶37} As to the second prong of the *Kalish* test, the trial court's overall sentencing decision does not constitute an abuse of discretion. As the trial court found, Verity had a lengthy criminal history, including 8 prior felonies and at least 12 prior misdemeanor convictions. *See* R.C. 2929.12(D)(2). The trial court acknowledged the fact that Verity was seeking rehabilitation and trying to change his life, but felt essentially that Verity had waited too long to do so . *See* R.C. 2929.12(B). Finally, the trial court found that the crimes had caused significant economic harm. *See* R.C. 2929.12. Thus, the sentence imposed by the trial court was fair and reasonable and therefore not an abuse of discretion. There are no appealable issues with regard to Verity's sentence.

{¶38} In conclusion, there are no meritorious errors. The plea colloquy complied with Crim.R. 11(C) and, as such, the plea was intelligently, voluntarily, and knowingly entered. The sentence imposed by the trial court was neither clearly and contrary to law, nor was it an abuse of discretion; specifically it complied with recently enacted H.B. 86.

Accordingly, the judgment of the trial court is affirmed and counsel's motion to withdraw is granted.

Vukovich, J., concurs.

Waite, J., concurs.